All right, the last case on calendar today is Brunelle v. GE Capital Information Technology Solutions, Inc. I'm Roger Eaton for the plaintiff, Rene Harris Brunelle. May it please the court, this appeal from the grant of a summary judgment motion in favor of the employer dealing with four clauses of action. Primarily, we're at a stage where this is matters of law we're dealing with as opposed to matters of fact. There may be some factual issues, but primarily they're matters of law. The first issue is purely a matter of law, I believe, and the question is whether an at-will employment contract can be breached before the first date of employment. The trial court said no as a matter of law. I believe this court in its Comeau decision said yes. In fact, Comeau did state, and I quote, Therefore, whether or not Comeau's ultimate employment would have been at will is immaterial to our analysis of whether the contract was breached before Comeau's employment began. And I think that's where the discussion probably begins and ends on this issue, although there is some additional state authority, which I did cite in the brief, the Sheppard v. Morgan, Keegan & Company case, and it reached a similar conclusion with a little bit different analysis based on a breach of covenant of good faith and fair dealing, as well as an estoppel argument, and whether it's couched in those terms or a simple breach of contract, the answer is yes, an at-will employment contract can be breached in advance of the first day of work. Now, there are some mechanisms with the damages which aren't relevant here, but as far as whether this is an issue which should go to a jury, the answer is yes. It was not appropriate to have it decided by way of summary judgment. Well, counsel, if it were shown that your client had embezzled money from the company because she was working there temporarily, would you say that she could not be fired or told not to come to work when the contract was over? I think, if I understand correctly, we need to distinguish between three separate employment relationships my client had. The first one starting at the... I think you could answer my question rather simply. Could the company say, no, we can't take you on as an employee? I haven't considered it, but my instinct would be, yes, they could, but that's not the factual situation here because we have a very great factual dispute as to whether or not my client, who was alleged to have done basically time theft, falsifying her time records, my client denies that up and down, and the supervisor, Mr. Rullio, T.E., said his computer printout of when she swiped her badge didn't match her pay. So that would certainly be an issue of fact in this case. Does that answer your question? Well, yes and no. Let's assume that she, in fact, did jimmy her time record. Wouldn't that be a basis for saying I don't come to work, to say that there's no factual dispute? With no factual dispute, I'd have a hard time arguing that she'd have to be given the opportunity to come to work. I think that would be a reasonable position. Then we move to if the employer had a reasonable basis, maybe it's not true in fact, but all the evidence shown to him suggested that she had jimmyed her time records. I very vehemently disagree with that, that I think Mr. Rui said that, but he's contradicted many, many times, and I've set forth probably 10 to 15 ways in which his analysis was incomplete, contrary to the testimony of other employees there, contrary to the testimony of my client. The security badge system was never intended to keep track of time of individuals. It was never used to keep track of time for other individuals. Mr. Rui never saw my client arrive at work. He only saw her at work a couple of times a week. And as I said, there are probably another 10 to 15 reasons for disbelieving Mr. Rui and believing my client. And that gets into a factual analysis, which I'd be happy to present to a jury, in which I think we have the right to present to a jury under the facts of this case and the law. Now, what would be the case you'd present under Cumeau? The case we'd present would be that my client had an oral contract to begin work in January of 2005. Under the circumstances, she was not allowed to begin and prove herself at that work. She stopped seeking other employment, other full-time employment during the spring of 2004 when she accepted this verbal at-will job offer. So the claim would be for what? Monetarily. The damages, I think, are spelled out in Cumeau that they're... Reliance damages. Reliance damages. That's the term I was looking for. And where did you raise that? Where's that presented to the district court? What are the reliance damages you're seeking that were presented? I don't recall what we presented there. What I focused on is the court's reasoning, the district court's reasoning, that just as a matter of law, that we don't get beyond that. We never even got into the damage portion. But in the overall scheme of things, I think Your Honor is right, that this is one of the lesser causes of action, except perhaps monetarily, as it would relate to the fourth cause of action for tortious interference. And I think the real gravamen of the complaint is in the intentional and the negligent infliction causes of action. And those are the second and third causes of action. And in those two causes of action, I could probably mix the analysis for those two. The key case there is the Kelly v. General Telephone Company case, which we cited in the brief. And in that case, Kelly was accused by his former supervisor of misusing company funds and falsifying an invoice, very similar to the allegations of this case, where my client's been accused of falsifying her time records. The defendants in Kelly demurred to the intentional infliction cause of action and to the negligent infliction causes of action. In the court of appeal, it was a California case, California court of appeal, we hold that the spreading of deliberately false statements that a former employee in effect committed forgery is extreme and outrageous conduct. When such conduct results in alteration of the former employee's personnel records to reflect that he is ineligible for rehire, a position of power has been abused. What is it that I'm a little uncertain as to what is it that the defendants did that wasn't permissible? She's an at-will person, okay? All right, so whether she started today or she starts six months from today, in her current part-time temporary employment with the CompuCom, she commits an act which in their judgment made her an undesirable employee. Now, as an at-will employee, she could have been terminable, terminated for any reason, so long as it wasn't discriminatory. You're saying, well, we have a comeo which says that, and that was somebody I think who was moving, had to move all the way across country and whatever in anticipation of the job, and he wasn't warned of that or whatever. So that's not quite this case. Your Honor, if I can clarify, I think that may have been one of the problems down at the district court level, is we're not saying that the termination of employment was improper. We've never said that. We've always said she's an at-will employee and she could be fired for a good reason, a bad reason, or no reason, and if that's all that there was in this case, we wouldn't be here. The problem comes in when she is falsely accused of time theft, of dishonesty. So that was my question. What is she was falsely accused? In other words, what was the false accusation? What were the words used that support this cause of action against Compucom for communicating to Manpower, who was going to give her up? They were the agency that Compucom dealt with, wasn't that correct? That's correct. She came to Compucom through Manpower. Correct. And then they decided to communicate that she wasn't going to be leaving their payroll for Compucom. She may be going somewhere else, but she wasn't coming to Compucom. Now, what about that is tortious or intentional infliction and so on? When Mr. Rui, who was the supervisor who made the decision, he calls Manpower and says, we don't want her to come back, words to the effect, we don't want her to come back. Correct. Absolutely fine. We've got no problem with that. Then he gives the reason for her not being allowed to come back. Did he volunteer to answer the question? He answered a question. And he answered it. And he said? And he said, words to the effect. No, not words to the effect. What did he say? I don't have that exact in front of me. Time discrepancies. Time discrepancies. Okay. That's what he said. Words to that effect. A true fact. There were time discrepancies. There were time discrepancies between. That's true, weren't there? There were time discrepancies. Yes. Yes. Okay. So that's true. Now, what's the tort? I'm just trying to understand. No, I understand. And without having the quote in front of me of exactly what he said, it was. Your case turns on it. Oh, it does. Well, then why don't you have it? I wish I had a good answer for that. But they were words to the effect of time theft, and they certainly inferred. You're arguing an implication or. Which would be a reasonable implication, which is similar to what was in the Kelly case. And maybe maybe during my rebuttal time before then, I'll be able to come up with a set citation. I don't know. Manpower asked me if I could provide them additional information as to why her services were no longer needed on site. And at their request, I provided them with the security badge logs from Pfizer and information related to the clear vision time sheets to show them that there was discrepancy in time systems that were being utilized. That's what he did. And that provided the true records. And at the time, she was the employee of manpower. Right. For a dual employee. They were. They were. She was hired by CompuCom under the auspices of manpower. Correct. So you don't dispute that they had some legitimate interest in knowing why one of their employees was being rejected now by one of their clients? That manpower would have that or the. Well, both. Both would have a legitimate interest. Right. Yes. So where's the cause of action? The cause of action comes because the clear inference from that is that she was dishonest, where she was getting paid for time that she was not on the premises. And that is where the cause of action comes in, questioning her veracity, questioning her or accusing her essentially of time theft in those remarks. That's the clear inference. That's your inference. That's not what he said. He gave them the true information. OK. Well, the information. And he could have. He could. OK, so you're saying he could have fired her or revoked the offer for any reason whatsoever. They asked why. This is one of their temporary. And he said there were time discrepancies. Here are the records. That's what he said. And that's all that he did. And they're leaving it with a clear inference that she was dishonest and she was feeling. By who? Inference by Mr. Rui. No, that's otherwise. OK. That would be an implication. I think you're absolutely right in your choice of word. But it was an inference perhaps drawn by manpower. But that's their inferences. Well, that that would be a reasonable influence inference. And that goes to the to the cause of action for the intentional infliction with manpower. Then it goes back to my client not being allowed to go back to work. Why not? Because you're accused in essence of stealing time. And we're saying is once he makes that comment that he went as far as, you know, this record doesn't match that record. Then he should have also gone in and either done the further investigation, a complete investigation, a fair investigation, rather than ignoring all the factors that we presented in our brief. I mean, it's very, very unfair to make that comment out of context of the of the overall circumstances. He never even questioned my client. Never even asked her. Where were you on this day? Where were you on that day? OK. Thank you, Your Honor. I'll reserve my final 28 seconds. And I'll be real brief on my rebuttal. May it please the Court. My name is Lena Sims and I'm representing CompuCom Systems. We're here today to decide whether or not the district court properly granted summary judgment, and we believe the district court did. There are four causes of action that were alleged in the complaint, breach of contract, and the appellant concedes that the contracting issue was at will in many places in the record, which I'm happy to cite if Your Honors require that. Because the contracting issue was at will, the employer had the right to terminate her employment for any reason or no reason. Well, he's conceded that. The question, maybe if you could just come to the point that we left counsel left on, was his claim, his argument is that they could have done so. And there's the peculiar situation in this case, different from many other employment cases, where a subsequent employer asks a former employer for, you know, confirmation of employment or reasons for termination. And I know that those areas are fraught with danger. In this case, manpower was the source of Ms. Brunel's employment with CompuCom and asked for information. Counsel makes the point, however, that the information provided does carry with it the implication that she was falsifying time records. That does seem to be a reasonable inference. I would assume you're nodding, so I assume you'd agree with that. I don't know if I agree with that. I understand that that is an appellant's argument. Okay. So given that situation, why wouldn't there be an obligation? I'm not sure whether it's on – manpower wasn't necessarily in a position to demand records, I gather, from CompuCom. I don't know whether they could have or not. But it seems to me that there is a cloud then hanging over Ms. Brunel, which may be entirely unfounded, given that CompuCom could have fired her for any reason. And that, you know, wouldn't create any cloud. But once the records were produced, and it seems to me that does create a situation where she's really been hit with a double whammy, particularly if it was custom and practice to swipe cards under the prior administration at CompuCom. Swipe in the sense of not stealing. Right. We're not getting into embezzlement. Swiping the badge in, badge out issue. Let me begin with the fact that appellant cites to no case law in the record or no authority for taking that position, that this is unfair, although she makes the general allegation that it was unfair. In employment law situations, managers have the ability to make employment law decisions that may not always be popular decisions or decisions that those who feel the repercussions agree with. But they make those decisions. And so long as they don't make those decisions based on improper factors. Right. But that's – you're begging the question. The question I'm asking is, I grant all that, but if you are laid off from your job, and somebody comes along and asks your employer, well, why was she laid off? And they say, well, there were her billable hours were questioned by one of the clients. Okay. Would you feel that that was a fair statement to the subsequent employer to explain why you had been let go? Yes, Judge Fischer. And in our summary judgment motion, we did also make the argument to the district court that it was a privileged statement from – between entities who have a common interest. Judge Sammartino at the district court level did not decide that issue, so it kind of remains there. Left it behind, I think, what we're doing here today. Appellant sites to Kelly v. General Telephone Company, I think there's a big distinction to be made between those two cases, which shows it doesn't apply in this case. In Kelly, the allegations – and it was at the level of a demur, so they were just allegations at that point. The allegations were that the person's former supervisor had completely fabricated, trumped up allegations of fraud to prevent the person from being rehirable. And the court said that would state a cause of action for intentional infliction of emotional distress with respect to the outrageous conduct element of that claim. Here, the undisputed facts are that a supervisor perceived, based on his own view of the workplace in the morning when he showed up, hey, Ms. Brunel says on her time records that she's here, but I don't recall seeing her here at particular times. He then goes to the badge-in-badge-out records and verifies what he has personally witnessed, that she's not always here during the time she says that she's here, and he makes a decision based on that evidence. And he also did ask her, by the way, about her timekeeping practices. So he did question her, and I believe that counsel misstated the record when he said earlier that she was not questioned. Certainly, Ms. Brunel clearly disagrees with his decision to contact Manpower and say we are terminating her services at the Pfizer campus. And Manpower then asked why, and he shared that there were discrepancies in the records. He didn't trump up anything. He made a decision that was a legitimate personnel management decision based on his own observations in the workplace and on the records and after talking to her. I understand she doesn't agree. Counsel, I have a question for you. On your legal theory of privilege, if there is a privilege because of that business relationship, what would defeat the privilege? Would it require malice, or could it be defeated by a negligent failure to investigate? Thank you, Judge Gould. It could be defeated by malice, but not by negligence. He could actually be wrong in his conclusion. But so long as he didn't maliciously try to take some action against her, make some statement that was motivated by malice so that she's denied the benefits of her employment, then there is a common interest privilege between the two entities. Does that answer Your Honor's question? It does. And so if there is no genuine issue of fact on malice, on the legal theory of privilege, I suppose we might be able to affirm, even if the district court didn't reach it, if that's supported by the record. I believe Your Honor is correct that this Court may affirm summary judgment on any reason that's supported by the record and is not limited by the district court's particular option. What claims are affected by this privilege? Is it just the interference claim or any other claim? I would point, Your Honor, to a case called Terry, and I apologize that I do not have the full site before me right now, but it's at 131 Cal. App. 4th, 1534. And Terry says that the common interest privilege applies to torts in general. So it would be our position that appellants' claims for tortious interference, intentional infliction of emotional distress, and also, to the extent that it could even exist, general negligence, because they are based on those statements that Mr. Rui made, would fail. Okay. Thank you. I wanted to also, my opposing counsel stated earlier during his opening argument that Mr. Rui's statements that her time cards were, did not agree with her badge-in-badge-out times were disputed by the testimony of other employees. I am not aware of anywhere in the record where that is the case. For her position to be viable, she would have had to have come in on somebody else's swipe, left, and then come in and swipe on her own. Is that accurate? That is accurate, Your Honor. And one thing that troubles me about this case, or at least about appellant's position, is that she takes issue with Mr. Rui's decision and says that Mr. Rui did not go out and exhaust all possibilities, which I think would be an untenable position to take legally to second-guess supervisors who make personnel management decisions based on objective criteria that they see, even if they make the wrong decision or even if we disagree with their decision, so long as they didn't make the decision based on something like discriminatory animus. Yeah, but see, that's sort of beside the point as to what they're claiming. They're not challenging his ability to make that decision. The troublesome part of this is that the mistake, if it were a mistake, let's assume it's a mistake, that there was a perfectly good explanation for it. He just didn't know it, and therefore turns over records, makes a statement about time discrepancies, and turns over records communicating implicitly, if not explicitly, that she was, in his view, engaged in fraudulent timekeeping, when, in fact, that was not the case. I come back to my hypothetical. If you are terminated from your law firm because a client raised a question, unbeknownst to you, about your billable hour reports, and raised something with your partner, I'm assuming you're an associate partner. I'm not saying you are, but assume those old days when you might have been. Okay. You're taking my recent promotion away from me. No, well, no, not unless your billable hours are subject to some review here now, and that's my point. Let's suppose, then, that as an outwill employee, you are fired, terminated, and the next employer, another law firm comes along and asks your supervisor, why did she leave? And he says, billable hour discrepancies. You've never been given an opportunity to explain the details of it, or even know precisely what the claim was. Now you're going around the legal community with a cloud over you. No cause of action at all? Is that your theory? No. Actually, I believe in those circumstances, the proper cause of action would be a claim for defamation. And with a claim for defamation. But it wouldn't be false, right? It wouldn't be false. He didn't say anything false. And the truth was that the billable hours that you reported were because you were told by your mentoring partner that the billing partner will always adjust, but we want you to bill for all the time that you think you put into this. So you billed for thinking in the shower, and the client raised a question about it, so the billing partner cut it down. Defamation? The fact remains is that what's out there is that they have, without foundation, created an impression, not maliciously, not intentionally, but negligently, if you will, that suggests that you are a cheat on your time record. I believe, Your Honor, that the scenario that you just described would fall under slander per se, because you are making statements that go to somebody's ability to practice saying that they're dishonest in their profession. That's what they did. The ---- Slander per se. He just pleaded the wrong cause of action. But in our summary judgment motion, we pointed out that a defamation claim would have been time barred, which I believe is probably why they didn't bring a defamation claim. Okay. And unfortunately, whether or not they would have had a viable defamation claim, we can't fully vet here because it was never alleged. No, I understand. It's not here. It's not here. All right. Okay. Is there anything else? I don't know how much of my time I have used. You have 42 seconds. I have 42 seconds. Okay. Well, I'd like to address then very briefly the motion for sanctions. We filed the motion for sanctions because it's an issue that my client believes very strongly in. It's not something that we take lightly, and it is, in fact, the only motion for sanctions I have ever filed. We believe this is a case where sanctions are appropriate because appellant continues to pursue litigation on claims based on undisputed facts that are well-established in the record, well-established law, which goes back to the 1970s, which are laid out in the motion. And what's the clearly established law that says that on the facts of this case, there's no intentional infliction of emotional distress? You say they had a legitimate claim for slander, per se, or defamation, but not theories that are quite here. They may have, but that claim was time-barred. So the intentional infliction of emotional distress claim does not, from the beginning it's been apparent that it does not, is not viable here. And the reason is because the facts cited to in Kelly, which they latched on to, is the one case that supports that claim. Kelly is, does not apply here because in that case, the supervisor literally completely trumped up charges against the employee. In this case, we have an individual who disagrees with a decision that her supervisor made, which probably most people would not be happy about that particular decision to be made. And she does not dispute that he made it based on objective evidence that he relied on. Her complaint is that she disagrees and she didn't have an opportunity or she doesn't feel she had an opportunity to tell him that she disagreed. Well, I think her complaint is that, at least on that, the other side of the, the part that is arguably viable here is that his decision was communicated to a third party, which, as you suggested, had it been planted per se, would have been on the theory that it impugned her reputation. So, okay. I think we have the point. Okay. Thank you, Your Honor. All right. Thank you, counsel. You have 42 seconds. First of all, the question of malice is a question of fact. There are about 10 pages in the opening brief that set forth many, many facts which go to whether or not Mr. Rui acted with malice in making his statement and in not investigating. It's a counsel. And first of all, I think you were over by 40 seconds rather than I am. I apologize. I gave him 46. Okay. But I would ask Judge Fisher to give you a couple of minutes to reply. But what concerns me is what evidence is there that shows a genuine issue of fact on malice? Malice is a fact issue. You have some evidence you've tendered. But on this record, what was submitted to the district court that would defeat the privilege of common interest, for example? Okay. The first one is Rui's lack of investigation beyond what he did. He never told plaintiffs her badge swipes did not match. He never asked plaintiffs to explain why her badge swipes supposedly did not match. It goes on into the purpose of the badge system was never meant to be a time system. The badges are not reliable. How is that evidence of malice, though? Counsel might it might show negligence like counsel like can argue. Well, he did A, B and C. He didn't do D, E and F and a reasonable person would have. But how does that show he was malicious in what he was? I believe it either shows malice or the alternative would be a conscious disregard. And I think that's that's the other alternative, which which this would certainly do. Rui, Mr. Rui knew that the security badges were not the exclusive means of entry. He knew people went in together at times. All the programs which were due to start at six o'clock went off without a hitch. Rui asserted personal attacks against my client at deposition that she wasn't a productive worker. The man who trained her said she was a productive worker. That's a Mr. Soto. So and I and I think with all those facts, I think they are set forth pretty clearly in the brief. It could either show a factual question for malice or a conscious disregard. And I've never been subject of a motion for sanctions before that I recall. I think the facts favor the plaintiff and the law favors the plaintiff. And there certainly is. This was not a frivolous appeal by any manner. And should sanctions be imposed, I'm sure it would have a very chilling effect on one attorney presenting cases in the future. Thank you. Thank you. Thank you. Case argued is submitted. We thank counsel for their arguments and we'll stand in recess. This court shall stand in recess.
judges: Fletcher B. , Fisher, Gould